NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

CLAUDIA D., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, A.B., *Appellees.*

No. 1 CA-JV 21-0133
FILED 9-21-2021

---

Appeal from the Superior Court in Maricopa County
No. JD17685
JS20657
The Honorable Christopher T. Whitten, Judge

**AFFIRMED**

---

COUNSEL

David W. Bell Attorney at Law, Higley
By David W. Bell
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Emily M. Stokes
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Cynthia J. Bailey and Judge Jennifer M. Perkins joined.

---

**C R U Z**, Judge:

¶1        Claudia D. ("Mother") appeals the superior court's order terminating her parental rights to her daughter A.B.[1]  For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

¶2        A.B. was born in September 2020.  Mother tested positive for methamphetamine upon her admission to the hospital for A.B.'s birth and A.B. tested positive for exposure to methamphetamine while in utero.  When DCS investigators spoke to Mother at the hospital she declined drug testing and treatment for substance abuse.  DCS had been involved with Mother since 2009—before A.B. was born Mother's parental rights to ten children were terminated based on her substance abuse.  A number of those children were also born substance exposed.  The most recent termination occurred in February 2019, less than two years before A.B.'s birth.

¶3        DCS removed A.B. and put services in place, including drug testing at Physician Services, Incorporated ("P.S.I."), case-aide services, and drug treatment at Terros.  Mother completed an intake at Terros in October 2020 and disclosed that she used methamphetamine approximately three times a week.  She claimed to have had a substance abuse problem for only two or three years.  After the intake, Mother failed to attend two out of seven group counseling sessions at Terros, and received a ten-day closure letter.  In December 2020, Mother attended six out of ten group sessions, but when she attended she frequently arrived late and appeared withdrawn.  At the end of December, Terros sent Mother a second ten-day closure letter.  In January 2021, Mother went to only two of the eight group sessions, and in February 2021 she attended six and one-half out of eight sessions.  In March 2021 Mother missed one session and was late for another.  At the end of March, just days before the termination adjudication

---

[1]        Mother also filed a notice of appeal from the superior court's order finding A.B. dependent but raises no issues concerning the dependency.

hearing, Terros sent Mother a third closure letter. On multiple occasions Terros advised Mother she needed to drug test at PSI. Although DCS referred Mother to PSI in September 2020, she never went. Between September 2020 and March 2021, she missed fifty-one scheduled tests. Mother's PSI records showed that in 2017, 2018, and 2019 when she was required to test at PSI for other matters, she missed most of the tests. Because Mother never demonstrated thirty days of sobriety, DCS did not refer her for a parent aide.

¶4         From September to December 2020, a case aide supervised visits between Mother and A.B., but Mother missed multiple visits. In late December she told the case aide that she had COVID 19 symptoms and would get tested. After Mother continued missing visits and failed to provide a negative COVID test, the case aide closed her out. Mother continued visiting A.B. with A.B.'s placement (A.B.'s paternal aunt) supervising the visits.

¶5         DCS filed a dependency petition in September 2020. The next month, it filed a petition to terminate Mother's parental rights pursuant to Arizona Revised Statutes ("A.R.S.") section 8-533(B)(3) (chronic substance abuse), and (B)(10) (rights to another child terminated within the preceding two years for the same cause). In April 2021, the superior court held a combined dependency and termination adjudication hearing. Mother testified at the hearing that she was unable to test at PSI because she had lupus and was afraid of COVID, and also because she did not have a photo identification. The superior court found A.B. dependent and terminated Mother's parental rights on the grounds alleged in the termination petition. The court found that termination was in A.B.'s best interests.

¶6         Mother timely appealed, and we have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), -2101(A)(1).

## DISCUSSION

¶7         Under Arizona law, before the superior court may terminate parental rights it must find that the moving party has proven one or more of the statutory grounds for termination by clear and convincing evidence. A.R.S. § 8-537(B). The court must also find by a preponderance of the evidence that termination is in the child's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). We view the evidence and the reasonable inferences to be drawn from it in the light most favorable to affirming the superior court's termination order. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009). We will not reverse the superior court's order

unless reasonable evidence does not support the superior court's factual findings. *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010).

**¶8** Mother argues that the superior court erred by finding that DCS made diligent efforts to provide her with reunification services. She claims that her lack of progress in services was caused by a lack of communication on DCS's part.

**¶9** Before seeking to terminate parental rights pursuant to A.R.S. § 8-533(B)(3) or (B)(10), DCS must make reasonable efforts to provide appropriate reunification services. *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 33 (App. 1999); *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 49, ¶¶ 14-15 (App. 2004). DCS makes reasonable efforts to provide reunification services when it provides a parent with the time and opportunity to participate in programs designed to help the parent become an effective parent. *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). DCS need not provide "every conceivable service" or ensure that the parent actually participates in the services offered. *Id.* Nor is it required to provide a parent with unlimited time to take positive steps toward rehabilitation. *Maricopa Cnty. Juv. Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994). DCS is not required to undertake futile reunification efforts and is required to undertake only those measures with a reasonable prospect of success. *Mary Ellen C.*, 193 Ariz. at 192, ¶ 34.

**¶10** DCS argues that Mother waived her claims about services by failing to timely challenge the adequacy of services in the superior court. *See Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 178-79, ¶¶ 16-18 (App. 2014) (any claim that DCS is failing to provide appropriate reunification services must be timely raised in the superior court or the issue is waived). Mother takes issue with the superior court's finding that she did not challenge the adequacy of services, arguing that she repeatedly attempted to communicate with DCS because she "was concerned about various services." As noted by the superior court, Mother attended periodic report and review hearings and pretrial conferences and had the opportunity to raise any obstacles to her progress or the need for additional services, but she did not do so.

**¶11** Even if Mother did not waive her argument concerning services, sufficient evidence supported the superior court's finding that DCS made diligent and/or reasonable reunification efforts. The record shows that DCS offered Mother drug testing, substance abuse treatment, and case-aide services. Mother's participation in services was inconsistent,

but even so, her substance abuse and drug testing services were still in place at the time of the termination adjudication hearing and had never been interrupted or discontinued, despite the ongoing case manager's admitted failure to consistently communicate with Mother. Further, the record shows that some of the communication issues between Mother and DCS were attributable to Mother, who failed to provide DCS with updated contact information and failed to timely respond to the case manager by email after the case manager obtained Mother's email address. Nor did Mother ever email the case manager about her alleged barriers to participating in drug testing and treatment. Because reasonable evidence supported the court's finding that DCS made reasonable reunification efforts, we affirm its order terminating Mother's parental rights pursuant to A.R.S. § 8-533(B)(3) and (B)(10).

**CONCLUSION**

¶12 For the foregoing reasons, we affirm the superior court's order terminating Mother's parental rights to A.B.



AMY M. WOOD • Clerk of the Court
FILED:   AA